UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL KEENE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 24-CV-00138-CDL |
| | ) |
| BERKLEY CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the defendant's Motion to Dismiss for Failure to State a Claim (Doc. 7). By consent of the parties, the undersigned has the authority to conduct all proceedings and order the entry of a final judgment in this action in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

**I.      Background**

According to the plaintiff's petition, the plaintiff at all relevant times was an employee of Louis Lepak Trucking Co. Inc. (Louis Lepak).[1] On or about March 6, 2023, the plaintiff was performing maintenance work on a truck owned by his employer. The plaintiff and his supervisor were holding the hood up while a coworker worked below the hood. The plaintiff's supervisor stepped away, and a gust of wind came up. The plaintiff

---

[1] Pursuant to the standards governing a motion under Fed. R. Civ. P. 12(b)(6), the allegations set forth in the operative complaint are accepted as true for purposes of the Motion.

was injured when he was forced to bear the entire weight of the hood by himself to prevent the hood from falling on his coworker.

The defendant issued a Commercial General Liability Coverage and Commercial Auto Coverage policy to Louis Lepak that became effective on May 1, 2022. (Doc. 7-1) (the Policy). It is undisputed that the Policy was in effect at the time of the underlying events and that the Policy covered the subject truck.

After his injury, the plaintiff filed a worker's compensation claim against Louis Lepak. That claim remains open with the Oklahoma Workers' Compensation Commission. The plaintiff also sought benefits under the Uninsured/Underinsured Motorist Coverage (UM/UIM) provided by the Policy. The defendant denied coverage for plaintiff's injury.

The plaintiff filed this action in Tulsa County District Court, and defendant timely removed the case pursuant to diversity jurisdiction. The plaintiff asserts a single claim under Okla. Stat. tit. 36, § 3636 for UM/UIM coverage for his injury. Doc. 2-1. On April 4, 2024, the defendant timely filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 7) (the Motion).

II.     **Legal Standards**

   A.     **Dismissal Standard**

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. A complaint must provide "more than labels and conclusions,

2

and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must contain enough "facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

At this stage, the court must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs,* 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Cory v. Allstate Ins.,* 583 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1109-10 (10th Cir. 1991)).

B.  **Elements of a UM/UIM Claim under Oklahoma Law[2]**

Section 3636 of Title 36 of the Oklahoma Statutes "mandates UM coverage to protect insured persons from monetary loss due to personal injury resulting from an accident caused by another who carries no liability insurance." *Bituminous Cas. Corp. v.*

---

[2]  Because this is a diversity case, Oklahoma substantive law applies. *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1308 n.4 (10th Cir. 2019).

*Pollard*, 508 F. App'x 780, 784 (10th Cir. 2013) (unpublished).[3] The statute provides, in relevant part:

> A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
>
> B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury, sickness or disease, including death resulting therefrom. . . .
>
> C. For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

Okla. Stat. tit. 36 § 3636.

The Supreme Court of Oklahoma has construed this statute as requiring the claimant to establish four elements to trigger UM/UIM coverage: (1) the injured person is an insured

---

[3] Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

under the UM provisions of a policy; (2) the injury to the insured has been caused by an accident; (3) the injury to the insured has arisen out of the ownership, maintenance or use of a motor vehicle; and (4) the injured insured is legally entitled to recover damages from the owner or operator of the uninsured motor vehicle. *Bituminous,* 508 F. App'x at 784 (citing *Ply v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 81 P.3d 643, 647 (Okla. 2003)).[4] To establish causation, the claimant must show: 1) the use of the vehicle is connected to the injury, and 2) that use is related to the transportation nature of the vehicle. *Id.* at 785 (citing *Safeco Ins. Co. of Am. v. Sanders*, 803 P.2d 688, 692 (Okla. 1990)) (i.e., the "transportation use" requirement).

### III. Discussion

Defendant asserts three grounds for dismissal. First, it contends the subject truck was not an "uninsured motor vehicle" within the meaning of the Policy and the relevant statute. Second, defendant argues the allegations fail to satisfy the "transportation use" requirement of § 3636. Third, defendant argues the plaintiff is not "legally entitled to recover" from Louis Lepak, as required to state a claim under the same statute.

---

[4]   Only the fourth element is challenged in the Motion, although defendant reserves any right to contest the other elements at a later stage of the litigation. *See* Doc. 7 at 5 n.2.

A.      **"Uninsured Motor Vehicle"**

The defendant contends the truck at issue is not an "uninsured motor vehicle" as defined in the Policy. The relevant Policy endorsement states that it "will pay, in accordance with Title 36, Oklahoma Statutes, all sums the insured is legally entitled to recover from the driver of an 'uninsured motor vehicle,'" resulting from the ownership, maintenance or use of the uninsured motor vehicle. (Doc. 7-1 at 112). The Policy defines "uninsured motor vehicle" as a land motor vehicle "for which no liability bond or policy at the time of the 'accident' provides at least the amounts required by applicable law." *Id*. at 115.[5]

The defendant contends that the Policy's definition of terms complies with the relevant state statute. It argues that the subject truck plainly is not an "uninsured motor vehicle" as defined in the Policy, because the truck was insured at the time of the plaintiff's injury. The defendant points out that Louis Lepak is covered by the Policy, which extends $1,000,000 of Commercial General Liability coverage. (Doc. 7 at 6; *see* Doc. 7-1 at 61).[6]

---

[5]    The Policy also defines "uninsured motor vehicle" to include "an underinsured motor vehicle," which is a vehicle "for which there is a liability bond or policy at the time of the accident, the liability limits of which are less than the amount of the claim of the person or persons making such claim." *Id*.

[6]    "When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081 (10th Cir. 2017) (citing *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)). However, limited exceptions apply, and "a district court may consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id*. (internal quotation omitted). Here, the Policy, which defendant attached to its Motion, is specifically referenced by policy number in the Petition; plaintiff does not dispute the authenticity of the Policy attached to the

The plaintiff alleges his injury is covered by UM/UIM coverage because, under Oklahoma statute, plaintiff is limited to his workers compensation claim as against Louis Lepak, and the relevant statute bars the plaintiff from recovering damages from Louis Lepak for the alleged negligence of its employee(s). The relevant Oklahoma Workers Compensation statute states as follows:

> A. The rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer, or any principal, officer, director, employee, stockholder, partner, or prime contractor of the employer on account of injury, illness, or death. Negligent acts of a co-employee may not be imputed to the employer.

Okla. Stat. tit. 85A § 5.

Here, the plaintiff also claims pain and suffering and loss of earning capacity. He contends that, because Oklahoma law precludes him from seeking these damages against the employer, the subject truck involved in his injury is an uninsured motor vehicle, triggering the UM coverage provided in the Policy.

The Tenth Circuit recently certified the following question (inter alia) to the Oklahoma Supreme Court:

> 1. Where Mr. Smith was injured and killed as a passenger in an employer-owned vehicle that had $7,000,000 of liability insurance

---

Motion or the Policy language quoted in the Motion; and the Policy is central to the plaintiff's claim for UM benefits. Accordingly, the Court finds it is appropriate to consider the Policy itself without converting the Motion into a motion for summary judgment.

7

> and has not shown the claim would exceed $7,000,000, but where Mr. Smith cannot recover under the policy because the worker's compensation exclusive remedy provision of 85A O.S. § 5, bars suit against the employer, does that vehicle qualify as an uninsured motor vehicle within the meaning of 36 O.S. § 3636(C)?

*Anaya-Smith v. Federated Mut. Ins. Co.*, No. 21-6113, 2024 WL 2353882 (10th Cir. May 23, 2024).

The defendant's Motion was filed after the above question was certified, but before the Oklahoma Supreme Court issued its opinion. The Motion argues that the district court in *Anaya-Smith* wrongly held that an immune tortfeasor is the equivalent of an uninsured driver for the purpose of a UM claim under § 3636. *See* Doc. 7 at 7.

Subsequently, however, the Oklahoma Supreme Court answered the certified question above, holding that

> the federal district court correctly applied both the *Barfield* and *Torres* cases in its ruling on the status of the accident vehicle—it is an uninsured vehicle for purposes of determining UM benefits pursuant to 36 O.S.[] § 3636.

*Anaya-Smith v. Federated Mut. Ins. Co.*, 2024 OK 34, 549 P.3d 1213, *as corrected* (May 17, 2024). The Supreme Court further "expressly [held] that a tortfeasor, who is immune from suit due to the exclusive remedy of workers' compensation, may be an uninsured motorist as a matter of Oklahoma law." *Id*. As applied to the case before it, the Supreme Court clarified that,

> [w]here Decedent was injured and killed as a passenger in an employer-owned vehicle with $7,000,000 of liability insurance and no proof was submitted to show the claim would exceed $7,000,000,

8

> but where Decedent cannot recover under the policy because the workers' compensation exclusive remedy provision of 85A O.S. Supp. 2019, § 5 bars suit against the employer, the vehicle qualifies as an uninsured motor vehicle within the meaning of 36 O.S. Supp. 2014, § 3636(C).

*Id*. However, on separate grounds, the Supreme Court disagreed with the federal district court's determination that the policy in question did not extend coverage to the plaintiff in that case. In conclusion, the Supreme Court held that the decedent's estate in that case "is entitled to recover UM/UIM benefits under the subject policy." *Id*. at 1224. As a result of the Oklahoma Supreme Court's holdings, the Tenth Circuit remanded the case for further proceedings in the district court (which had granted summary judgment to the insurer on separate grounds). *Anaya-Smith v. Federated Mut. Ins. Co.*, No. 21-6113, 2024 WL 2353882 (10th Cir. May 23, 2024).

Here, defendant acknowledges that the "[p]laintiff's right in contract under the Policy is subject to the definition of 'uninsured motor vehicle' . . . ." (Doc. 12 at 3-4), and defendant does not assert that the Policy defines "uninsured motor vehicle" more narrowly than § 3636. *Cf. Thurston v. State Farm Mut. Auto. Ins. Co.*, 478 P.3d 415, 420-21 (Okla. 2020) (quoting *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 392 P.3d 262, 268 (Okla. 2017)) (alterations omitted) ("Insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into policy.").[7] Under

---

[7] The defendant has not filed any supplemental authority or sought to assert any additional argument following the ruling in *Anaya-Smith*.

9

the Oklahoma Supreme Court's holding in *Anaya-Smith*, the subject truck may be an "uninsured motor vehicle," because the workers' compensation exclusive remedy provision bars the plaintiff from suing the truck's owner, Louis Lepak, for his injury. Thus, the defendant's first argument for dismissal fails.

### B. Transportation Use Requirement

The defendant argues that plaintiff's Petition fails to allege facts showing that the so-called transportation use requirement is satisfied, i.e.: (1) the use of the subject truck was connected to the plaintiff's injury, and (2) that use is related to the transportation nature of the truck. Defendant contends this constitutes a necessary element of a claim under § 3636. *See Bituminous*, 508 F. App'x at 785 (citing *Sanders*, 803 P.2d at 692).

The defendant likens the instant case to others where courts ultimately found no causal connection between the plaintiff's injury and the transportation nature of the vehicle. In *Bituminous*, the relevant policy covered a workover rig, equipped with a 96-foot derrick, that served two distinct functions. *See id*. at 782. First, the rig could be used as a mode of transportation when the derrick was down. Second, when the derrick was raised, the workover rig functioned as a "fixed derrick" used to support work at well sites. Affirming the district court's granting of summary judgment for the insurer, the Tenth Circuit held that "the pertinent question for UM coverage is not whether a vehicle was being used for any intended function, but whether there was a causal connection between the accidental injury and 'the vehicle's inherent function as a means of transportation.'" The court found that, "[o]nce the workover rig was rigged up and immovable, the crew's work involving

the rig did not call for the use of transportation, and the rig's antecedent function as a means of transportation had therefore ceased." *Id*. at 790. The court found noteworthy that the parties agreed that when converted into a rig, the instrument "was not just a momentarily stationed vehicle." *Id*.

The court's holding in *Bituminous* does not support dismissal of the plaintiff's pleading in this case. Even assuming—without deciding—that "transportation use" is a necessary element of plaintiff's claim required to be pleaded, there are no facts pleaded in the petition to suggest the truck had dual functionality similar to the workover rig, which the court found "had been converted from a motor vehicle into a stationary 96-foot derrick." *Id*. at 789.

Defendant notes that here, the plaintiff alleges that he was replacing the hood of the truck in the Louis Lepak trucking yard, arguing that this endeavor "did not call for the use of transportation." Doc. 7 at 9. Defendant argues that, as in *Bituminous*, the truck's "antecedent function as a means of transportation had therefore ceased" when it was parked on Louis Lepak's property. *Id*. However, plaintiff's allegations at this stage do not indicate that the truck in question (unlike that in *Bituminous*) was anything more than "just a momentarily stationed vehicle" at the time of plaintiff's injury. 508 F. App'x at 789.

Other cases cited by defendants, also decided at the summary judgment stage, are similarly inapposite. In *Travelers Indemnity Co. of Connecticut v. Brook*, an employee was injured while using a box truck with a hydraulic liftgate to perform work on refrigeration units that were attached to trailers. Case No. CIV-23-420-F, 2023 WL 5750492 (W.D.

11

Okla. Sept. 6, 2023). The employee fell from a ladder that had been set up on the hydraulic liftgate while trying to service the refrigeration units. The district court found that "no reasonable juror" could find the transportation use requirement met, because the box truck was "simply the platform for [the employee] to perform his work on the trailer unit." *Id*. at *4.

Here, unlike in *Brook*, no allegations indicate that the truck plaintiff was working on was anything but a truck. For the same reasons, another case cited in the Motion, *Pearson v. St. Paul Fire and Marine Ins. Co*., is also not on point. *See* Doc. 7 at 10 (citing *Pearson*, No. CIV-05-0071-HE (W.D. Okla. May 11, 2005) (attached as Doc. 7-2) (finding transportation use test not satisfied on summary judgment where truck with a bucket lift was being used as "simply [a] platform" to perform non-transportation-related work)). Accordingly, this argument fails at the pleading stage.

### C. Allegations as to Fault

Finally, defendant contends the petition should be dismissed because it does not allege that the holder of the Policy, Louis Lepak, was at fault or caused the plaintiff's injuries. In order to be "legally entitled to recover damages" under the applicable statute, the plaintiff must show injury resulting from the actions or negligence of a "tortfeasor, someone who has committed a wrong from which the insured has suffered damages." *Great W. Cas. Co. v. Boroughs*, 505 F. Supp. 2d 1072 (N.D. Okla. 2007) (citing *Ply v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 81 P.3d 643 (Okla. 2003)); *see also* 36 Okla. Stat.

§ 3636. The defendant argues that the petition does not plead facts sufficient to show Louis Lepak is liable either through vicarious liability or by its own actions or inactions.

Here, the petition alleges that plaintiff's "injury occurred as a result of the negligence of [plaintiff's] supervisor in leaving the front of the subject truck while replacing the hood." Doc. 2-1 at 5. The plaintiff allegedly was "forced to hold the hood and its weight" on his own when the wind arose. *Id*. The petition alleges further that, "at the time of the subject collision, Plaintiff was employed by Louis Lepak Trucking Co. and was in the scope and course of his employment." *Id*. at 6. These allegations support a plausible inference that the plaintiff was injured at work while following the negligent directions of his supervisor, who was acting as an agent of Louis Lepak. This is sufficient to state a claim against the employer based on vicarious liability. *See Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994) (citing *Handy v. City of Lawton*, 835 P.3d 870, 873 (Okla. 1992) for proposition that employer is liable for harm inflicted by agent acting within the scope of his service to the principal); *see also Ply*, 81 P.3d at 650 ("[A]n employer may be at fault within the meaning of the phrase 'legally entitled to recover from the owner or operator' in § 3636 where a supervisor, acting on behalf of the employer, provides faulty or negligent instructions or directions to an employee relating to the use of an employer-owned motor vehicle and the employee is injured while following the instructions."). The Court rejects defendant's argument that more is required at this stage to plausibly allege the employer is at fault.

13

**IV.     Conclusion**

Based on the above analysis, the Motion to Dismiss (Doc. 7) is **denied**. The Court will enter a scheduling order forthwith.

IT IS SO ORDERED this 30th day of August, 2024.

*Christine D. Little*

Christine D. Little
United States Magistrate Judge